When you're ready, Counsel. Good morning, Your Honors, and may it please the Court. My name is Jacob Otama Paul, and I represent Petitioner Marcelina Quintanilla Centeno on a pro bono basis. She is a 59-year-old mother of two U.S. citizen children, and she's lived in this country for over 30 years. Could you speak into the microphone? I can't hear you. I'm sorry, Judge Noonan, I'll do better. I'd like to reserve two minutes, if the Court's willing, for rebuttal. Certainly. In this case, the BIA rejected Petitioner's claim for relief under the Convention Against Torture. The agency also applied criminal bars to her asylum and withholding of removal claims, and as an ancillary matter, it declined to afford her a competency hearing. Each of these actions was wrong, and in a nutshell, I'll explain why. For her cat claim, the agency was required to credit her testimony on appeal, but it failed to do so. She provided specific testimony about two other individuals who were similarly situated to her, who upon their return to Nicaragua in 2006 and 2008 were killed by the current Sandinista government. That's enough for her to win on her cat claim. For her asylum and withholding of removal claims, the record of conviction is inconclusive. She didn't plead no contest to sale of a controlled substance. What she pleaded no contest to was what she was charged with, and that was count one of the felony complaint. And count one of the felony complaint charged her with a violation of the California statute at issue, which encompasses a wide range in the species of conduct that are encompassed in the statute. But it was named, the substance was named as cocaine, correct? Yeah, and we're not disputing that she pleaded no contest to a controlled substance violation pertaining to cocaine. Well, let me ask you this. I'm looking at the plea colloquy, because that's all we've got, right? Right. And let's say I look at that and I conclude that it really is inconclusive. We really can't tell from that as to whether she pleaded to the issues, whether she pleaded to sale versus solicitation or offering, right? Right. I guess I read Young as saying in that situation, your client would lose. Am I wrong in reading Young that way? That's, you know, I think certainly Young can be read that way, and in the cancellation of removal context, it does apply. We don't dispute that that's how Young should be interpreted. In our reply brief, we outlined an alternative argument, a way for the panel to be able to distinguish Young, and that's basically the asylum and withholding statutes differ in their structure compared to the cancellation statute. In the cancellation statute, proving the absence of an aggravated felony is an element of eligibility, whereas in the asylum and withholding context, the presence of an aggravated felony is framed as an exception to someone who would otherwise be eligible for relief. In addition to that rationale, you know, we submitted a Rule 28J letter. Our position is that the Supreme Court case in Moncrief versus Holder overrules this portion of Young. I didn't follow that. Maybe you can expand on that, because I read Moncrief as not really affecting Young one way or the other. So what do you read in Moncrief to have overruled Young, really? Not all of Young, but this particular portion of Young. Moncrief reemphasizes that when there's ambiguity in the record, we can't be sure that the offense of conviction necessarily counts as a disqualifying criminal offense. Let me have you address, because your time is running short, the mental incompetency issue. In reviewing the record, it seems to me that the I.J. was very patient and sensitive in handling the issue. I mean, granted, because she was a pro se, was unable to afford counsel, there was some confusion, but I'm not sure that the record reflects that the confusion is really attributable to competency issues versus just, you know, lack of general legal knowledge and skill that a lawyer would have. I understand your point, Your Honor. All we're saying is that there were indicia of incompetency in the record that should have triggered at least a duty to inquire into her competency. There were several times where she declined to assert her rights. The medical records indicated that she was on psychiatric medication. She submitted a statement saying that she suffers from advanced stage depression. The I.J. and the board are not trained in mental health, so it's a better practice to at least open up that question. No doubt that it's a better practice, particularly in the wake of In Re MAM. My question to you is that in this record, to me, doesn't really indicate lack of rational or factual understanding of the proceedings, but I think at your point, then, is without a further inquiry, we may not know that. Exactly. Or is it that you're saying on this record there's some indication that she didn't understand what was going on? It depends what you mean by didn't understand. I think ‑‑ Well, within the meaning of In Re MAM, that she lacks a rational and factual understanding of the nature and object of the proceedings. Is anything in the record indicating that? Or is it just an absence? To me, that's an absence of an indication of lack of understanding. But your point, as I understood it, was that an inquiry should have been made because you don't know what's out there until you do the inquiry. That's right, Your Honor. That's the latter point. The other point to keep in mind here is that this is an administrative proceeding, and an administrative law judge has a greater ‑‑ more affirmative duty to develop the record compared to a trial judge in plain vanilla civil litigation. There, that kind of judge can rely on the adversarial process to develop the record. I think an administrative law judge, you know, has a greater duty to open up an inquiry. I think that, you know, the other point that I would make is that emphasizing that the agency here was required to credit her testimony on appeal, the government didn't even file a reply brief responding to our argument before the BIA on this point. The board said that her testimony was vague, but she provided specific testimony about two particular individuals who died in 2006 and 2008 were killed by the government. On those facts, I believe, Your Honor, is that she can succeed on her CAT claim. All right. Do you wish to save the remainder of your time? Yes, please. Thank you. Thank you. May it please the Court, Anna Nelson for the respondent, Attorney General. First I'll address the threshold issue of whether she was convicted of an aggravated felony. She was convicted under 1132 of the California Health and Safety Code, which is a divisible statute. So some elements are drug trafficking crimes and some aren't. Sale of a controlled substance, cocaine, would be. And as this Court noted, the plea colloquy very clearly says... No, it does not very clearly indicate anything. The judge, we're basically relying on a single word in, what, a sentence or two of the judge just asking her, do you plead, how do you plead to this count? I mean, I'll just be up front with you. I don't think it's clear at all. I think at best it's inconclusive. And so my question to you is what's your response to counsel's argument that in some way Young is not controlling, I guess, at least for the asylum aspect of her claim? In that case, it is controlling. As you noted, it stated that the burden is on the applicant. The Immigration and Nationality Act states that the burden is on the applicant for relief. It doesn't specify just cancellation. It doesn't distinguish asylum and withholding from that. Counsel comes up with a creative argument on exceptions versus mandatory elements to show cancellation, but that's not supported by the Act. The regulations specify that in 8 CFR 1240.8D states that if there's a ground for mandatory or non-mandatory cancellation, mandatory denial, the alien should have the burden of proving by a preponderance of evidence. And specifically in the withholding regulations at 1208.162, it expressly states that if it refers to particularly serious crime, if there's evidence that that ground of denial may apply, the applicant has the burden of proving by a preponderance of evidence that the ground does not. And counsel's argument is that that's in tension with the Immigration and Nationality Act, but there's really no other support for that tension other than his reading of how Congress worded the statute. But even within withholding and the regulations, if the burden did shift, that was actually specified, for instance, if the applicant shows past persecution, the burden shifts to the government to show that they did not establish a well-founded fear, and it actually states that, whereas this burden shifting isn't specified in the regulations, and there's really no other support for that shift of burden. So in that case, Young would apply, even if it is conclusive, it's still petitioner's claim, and whether she pleaded to sale of cocaine or charge one, it's inconclusive, and she didn't establish, based on that, that she was not convicted of sale of cocaine. What is the government's objection to a remand for an inquiry regarding some of the, as counsel put it, indicia of incompetency in this case? Because there was quite a record regarding her being on medication and suffering from depression, and she was really unresponsive to the IJ's, I think, seemingly very patient questions regarding how she wanted to go forward. In matter of MAM, which has already been referred to, the board stated that just a diagnosis of a mental illness is not enough to automatically establish a lack of competency, and the board also stated that a person is presumed competent unless there's some indicia of incompetence. And as Your Honor noted, there's, the record shows that she seemed to have a rational and factual understanding. She testified, she submitted an application. When the immigration judge asked if she understood, she said that she did. The immigration judge gave her continuances to find counsel, and she came back and said that she had actually talked to counsel and she either couldn't afford them or... Counsel, I want to interrupt you because I'm not getting everything you say. Are you speaking directly into the microphone? My apologies, Judge Noonan. Yeah, please keep it in mind. You're trying to communicate. I will. My apologies. She also asked the immigration judge about the timing of her appeal, in fact she filed an appeal to the board on her own. The indicia of incompetence that she mentions in her opening brief include a couple of times she deferred to the immigration judge whether the case should be continued, and the immigration judge said that it was up to her and asked her if she was prepared to go forward, and she answered that she was not, and so the immigration judge gave her those continuances, and she came back the next time with whatever she needed, so there's no indicia that she didn't understand or wasn't able to pursue that. She also, one of the other indicators that she said is that the immigration judge should have taken as indicia of incompetency is that she did not ask her two children to be her witnesses, but the record shows that throughout the proceedings she stated that she couldn't locate her daughter and that her son was in a group home in Chino, which wouldn't, it wouldn't alert the immigration judge that she was unable to call witnesses other than these other factors were happening. She did submit letters on her own and stated that she'd asked someone to help her translate and asked someone to help her proofread and all of these, as your Honor mentioned, it's a pro se person who may not necessarily have understood all of the legal matters, but the record reflects that the immigration judge walked her through these steps and gave her the procedural safeguards that she needed to represent herself. All right, thank you. Any more questions? Thank you. About counsel's point about the burden, you know, we cited a case from the criminal context that explains that when a statute outlines an exception, it intends to reflect a shift in burdens, just because the other parts in the immigration statute expressly state that the burden shifts on a particular element doesn't mean that it doesn't apply here, even though it doesn't expressly say so. The structure of elements for eligibility versus exceptions is enough to read into that structure that the burden should shift. We don't dispute that, you know, the non-citizen bears the burden to prove her entitlement to relief. It's just a procedural tool that the statute is implying that the government bears the burden to come forward with showing that an exception applies and kicks in. I guess I want to go back and re-read your reply brief argument on this point, but I'm looking at the statute and it says that the alien bears the burden of showing that she meets the applicable eligibility requirements, and so why, I guess, that seems to squarely put it on your client to show that, hey, I'm actually eligible, and if she's been convicted of this offense, she's not. So why, how do I square that? Right. I mean, it's interesting, because if you look at page six and seven of our reply brief, the statute, the asylum statute has part B1A, eligibility. That's the subheading there. And there's a separate subheading for exceptions. You know, we'd argue that when the applicant is required to prove entitlement for eligibility, you know, the use of the word eligibility in the subheading here is drawing the reader to these particular elements. Exceptions are in a separate section, and you see a similar structure for the withholding statute on page seven and eight in our brief. I think that's how you can square those issues. Yeah. I mean, I'm not sure it makes a difference regarding who's got the burden, because to me the change of plea colloquy was quite specific that it was a sale of cocaine. And I'm looking at the transcript, and it says that one in particular charges you with possession of cocaine for, excuse me, sale of cocaine. How do you understand the charge, and how do you reconcile that with your argument that somehow it's inconclusive? Your Honor, it's really an offhand comment, and you have to read that portion of the plea colloquy in hand with the felony complaint. The felony complaint lists two charges, one that highlights in capital letters, sale, transportation, offer, and count two, which are not narrowing allegations. They're just exemplary species of conduct meant to highlight some conduct that's encompassed within the statute. And essentially when the prosecutor was saying, excuse me, sale of cocaine, what's really going on there is I'm not talking about count one. It's just shorthand. There was no purposeful intent to squarely and unambiguously address, you know, sale of controlled substance. The prosecutor could have asked that question, and then we'd be in a much different situation. The judge could have made factual findings. We don't have that here. The record has to be a lot more clear for the government to be able to rely on this to prove a disqualifying offense. All right. I understand your argument. Thank you very much. The matter was then submitted for decision.
judges: Noonan, Nguyen, Watford